THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   FLOYD THURMAN and GLENDA
    THURMAN,                                CASE NO. C12-1471-JCC
10
                                            ORDER
11                         Plaintiffs,

12           v.

13   WELLS FARGO HOME MORTGAGE,
     WELLS FARGO BANK, N.A.,
14
                           Defendant.
15

16       This matter comes before the Court on (1) Defendant Wells Fargo Bank, N.A.'s motions

17   for summary judgment on Plaintiffs Floyd and Glenda Thurman's Washington Consumer

18   Protection Act ("CPA") claim and on its own breach of contract counterclaim (Dkt. Nos. 39, 43),

19   (2) the Thurmans' motion to set aside the order of default entered against them (Dkt. No. 57),

20   and (3) Wells Fargo's request for sanctions against the Thurmans and to strike and seal the

21   papers they filed in response to its motions for summary judgment. Having thoroughly

22   considered the parties' briefing and the relevant record, the Court finds oral argument

23   unnecessary and hereby GRANTS Wells Fargo's motion for summary judgment on the

24   Thurmans' CPA claim (Dkt. No. 43), STRIKES Wells Fargo's counterclaim, DENIES as moot

25   Wells Fargo's motion for summary judgment on its counterclaim (Dkt. No. 39), VACATES the

26   order of default against the Thurmans (Dkt. No. 38), DENIES as moot their motion to set aside

the order of default (Dkt. No. 57), DENIES Wells Fargo's request for sanctions, and GRANTS

Wells Fargo's request to strike from the record the Thurmans' references to confidential

settlement communications and to seal their opposition papers.

# I.   APPLICABLE LAW

Under Washington's Foreclosure Fairness Act ("FFA"), if a borrower is referred to

foreclosure mediation, the beneficiary on the deed of trust must transmit certain documents to the

mediator and the borrower and attend a mediation session. Wash. Rev. Code § 61.24.163(1)–(3),

(5), 7(b), 8(a). The borrower and the beneficiary have a duty to mediate in good faith; failure to

timely participate in mediation without good cause and failure to provide the documentation

required before mediation may constitute a violation of this good-faith mediation duty. *Id.*

§ 61.24.163(10)(a)–(b). A borrower can assert a beneficiary's violation of its good-faith duty as a

basis to enjoin the beneficiary's non-judicial foreclosure sale of the borrower's home. *Id.*

§ 61.24.163(14)(a). However, "[i]n any action to enjoin the foreclosure, the beneficiary is

entitled to rebut the allegation that it failed to act in good faith," and "[t]he mediator's

certification that the beneficiary failed to act in good faith during mediation does not constitute a

defense to a *judicial* foreclosure . . . ." *Id.* § 61.24.163(14)(a)–(b) (emphasis added). A violation

of the FFA duty of good faith is also actionable as an unfair or deceptive act in trade or

commerce under the CPA. *Id.* § 61.24.135(2)(a). The elements of a CPA claim are "(1) unfair or

deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4)

injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training*

*Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

Summary judgment is proper when there is no genuine issue as to any material fact and

the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *see* Fed. R.

Civ. P. 50(a) (court may grant judgment as a matter of law if "a reasonable jury would not have a

legally sufficient evidentiary basis to find for the party on that issue"). The party moving for

summary judgment has the burden of demonstrating the absence of a genuine issue of material

1    fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its

2    burden, the burden shifts to the non-moving party to designate "specific facts showing that there

3    is a genuine issue for trial." *Id.* at 324. In deciding a motion for summary judgment, a court

4    draws all inferences in the light most favorable to the party opposing the motion. *Blair Foods,*

5    *Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 668 (9th Cir. 1980).

6         Ordinarily, "[t]he court should freely give leave [to amend a pleading] when justice so

7    requires." Fed. R. Civ. P. 15(a)(2). However, when a party moves to amend a pleading after the

8    pleading-amendment deadline, it first "must show good cause for not having amended [its]

9    complaint[] before the time specified in the scheduling order expired." *Coleman v. Quaker Oats*

10   *Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *see* Fed. R. Civ. P. 16(b)(4) (scheduling order "may be

11   modified only for good cause"). "This standard 'primarily considers the diligence of the party

12   seeking the amendment.'" *Coleman*, 232 F.3d at 1294 (quoting *Johnson v. Mammoth*

13   *Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). Where a party moves to amend its

14   complaint after the pleading-amendment deadline, but does not specifically request that the

15   Court modify its scheduling order, the Court need not construe the motion as a motion to amend

16   the scheduling order; it may instead simply deny the motion as untimely. *Id.* at 608–09; *see, e.g.*,

17   *id.* at 608 ("court may deny as untimely a motion filed after the scheduling order cut-off date

18   where no request to modify the order has been made") (citing *U.S. Dominator, Inc. v. Factory*

19   *Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985)); *Atwell v. City of Surprise*, 440 F.

20   App'x 585, 586 (9th Cir. 2011) (district court did not abuse its discretion in denying plaintiff's

21   request for leave to amend complaint; plaintiff "should have requested a modification of the

22   district court's scheduling order before he requested leave to [amend]") (citing *Johnson*, 975

23   F.2d at 608–09).

24   ## II.    THE THURMANS' CPA CLAIM

25         In their complaint, the Thurmans allege that Wells Fargo violated its duty to mediate with

26   them in good faith when it allegedly failed to submit the required documents in advance of an

1   FFA mediation session scheduled with the Thurmans, failed to appear for the mediation, and

2   failed to pay its share of the mediation fee, which the mediator found to constitute a violation of

3   the good-faith duty. (Dkt. No. 1 Ex. A at 6 ¶¶ 4.18, 4.20–4.21; *id.* at 9–10.) They further allege

4   that this FFA violation "constitutes a per se violation of the [CPA]." (*Id.* at 8 ¶ 6.4.) They seek an

5   injunction against the non-judicial foreclosure sale of their home, "[a]n award of damages in an

6   amount to be proven at trial" and "treble damages, costs, and reasonable attorney's fees." (*Id.* at

7   8 ¶ 7.1.) While the Thurmans' complaint is devoid of any allegations of how Wells Fargo's

8   conduct harmed them, their theory of injury—revealed in discovery—is that if Wells Fargo had

9   mediated with them in good faith, (1) they would have secured a favorable loan modification and

10  (2) they wouldn't have had to pay a lawyer to attend the mediation session. (Dkt. No. 46 Ex. E.)

11          Wells Fargo moves for summary judgment on the Thurmans' CPA claim. It argues there

12  is no evidence in the record to support the Thurmans' theory of injury and causation because (1)

13  the Thurmans were not eligible for a loan modification under the Home Affordable Mortgage

14  Program ("HAMP") or Wells Fargo's Mortgage Assistance Program 2 ("MAP2R"), and (2) they

15  would have paid an attorney to attend the mediation session even if Wells Fargo *had* mediated in

16  good faith. The Thurmans were ineligible for a HAMP modification, Wells Fargo argues,

17  because HAMP requires a maximum unpaid principal loan balance of $729,750, and the

18  Thurmans' loan balance exceeded that sum. (Dkt. No. 45 at 3–4 ¶¶ 12–13 & Ex. B at 5.) And the

19  Thurmans were ineligible for a MAP2R modification, Wells Fargo argues, because MAP2R

20  requires a showing by applicants that they intend to remain living in the property securing the

21  loan for more than one year (*id.* at 4–5 ¶¶ 15–16), and the Thurmans had no intention of doing

22  so, as evidenced by the fact that they listed the property securing the loan for sale from June

23  2011 to January 2012 (Dkt. No. 44 at 2 ¶ 5; Dkt. No. 45 at 5 ¶ 17 & Ex. C) and for rent from

24  October of 2011 to January of 2012 (Dkt. No. 44 at 2 ¶ 6). Even if the Thurmans were *eligible*

25  for a MAP2R modification, Wells Fargo argues, they wouldn't have *qualified* for one because

26  they couldn't have achieved the required debt to income level, and the net present value test for

1    their hypothetical modified loan was negative. Since there is no record evidence to support the

2    injury and causation elements of the Thurmans' CPA claim, Wells Fargo argues, it is entitled to

3    summary judgment. *See Johnson v. Camp Auto., Inc.*, 199 P.3d 491, 493 (Wash. Ct. App. 2009)

4    ("The failure to establish any of the elements is fatal to a CPA claim.").

5            The Thurmans raise a number of meritless arguments in response, none of which raises a

6    genuine issue of fact as to injury or causation. First, they point the Court to an assurance of

7    discontinuance entered into between the State of Washington and Wells Fargo's predecessor, in

8    which it agreed, "on an ongoing basis," to "offer Eligible Borrowers affordable loan

9    modifications in accordance with" certain provisions. (Dkt. No. 49-1 at 10.) The Thurmans argue

10   that "they are third-party beneficiaries of this agreement and should have been provided a

11   modification of their loan a year before they requested an FFA mediation," and yet they "do not

12   appear to have received any of the notices referred to in the agreement." (Dkt. No. 58 at 2.) Even

13   if a private right of action based on an alleged violation of the assurance of discontinuance were

14   available—and it is not[1]—the Thurmans utterly failed to plead such a claim in their complaint.

15   The Thurmans ask the Court to let them amend their complaint to add such allegations. The

16   Court DENIES this request. Any amendment would be futile because a violation of the assurance

17   of discontinuance does not create a private right of action. In any event, the Thurmans failed to

18   move to modify the scheduling order to allow a pleading amendment past the deadline and have

19   failed to show good cause for such a modification. *See* Fed. R. Civ. P. 16(b)(4); *Coleman*, 232

20   F.3d at 1294; *Johnson*, 975 F.2d at 608–09.

21           The Thurmans also claim that their loan broker over-stated their income on their loan

22   application and that they were "issu[ed] a 'Pick a Payment' loan when Plaintiffs[] sought a

23   'conventional' loan"—both allegedly "act[s] of fraud which also give[] rise to a CPA claim."

24   _____

25           [1] (Dkt. No. 49-1 at 26 ("***No Third Party Beneficiaries Intended.*** This Assurance is not

26   intended to confer upon any person any rights or remedies, including rights as a third party
     beneficiary," or "to create a private right of action . . . ."); *see id.* at 9–10.)

1   (Dkt. No. 58 at 12.) Again, the Thurmans alleged nothing to this effect in their complaint, and

2   only lack of diligence can explain their failure to raise these fraud claims sooner. These

3   allegations are simply not a part of this lawsuit, and they do nothing to rebut Wells Fargo's

4   showing of an absence of evidence to support the injury and causation elements of the claim that

5   *is* a part of this lawsuit—the Thurmans' CPA claim.

6         The Thurmans claim there is a genuine dispute of fact as to "whether Wells Fargo

7   actually owns the subject Note and the beneficial interest in the subject Deed of Trust to even

8   have standing to mediate a modification of the obligation in the first place," and whether "the

9   Note held by Wells Fargo is in fact the original note as claimed by [Wells Fargo]." (*Id.* at 7.) The

10  Court fails to understand the Thurmans' argument. The Thurmans' CPA claim is premised on the

11  fact that Wells Fargo is the lawful owner of the note and beneficiary on the deed of trust. If it

12  isn't, then Wells Fargo would not have been in a position to modify (and cannot be held to have

13  injured the Thurmans by failing to modify) their loan at the FFA mediation session. In other

14  words, if Wells Fargo is not the beneficiary, then it never had a duty to mediate in good faith,

15  and the Thurmans' lawsuit is moot. Manufacturing a dispute of fact on the issue of note

16  ownership or Wells Fargo's beneficiary status does not help the Thurmans defeat Wells Fargo's

17  motion for summary judgment.

18        The Thurmans argue that "[v]alid questions of material fact exist[] on a number of

19  grounds, including . . . whether Plaintiffs had sufficient means to fund a modification of the

20  obligation" and "as to the calculations used by Wells Fargo to conclude that Plaintiffs would not

21  have [qualified] for a modification of their loan . . . ." (Dkt. No. 58 at 7.) But the Thurmans fail

22  to point to any evidence that puts into dispute Wells Fargo's predicate assertion of fact that the

23  Thurmans were not *eligible* for a HAMP or MAP2R modification in the first place because their

24  unpaid principal balance exceeded HAMP's limit and they had no intention of staying in their

25  home for more than one year. *See* Fed. R. Civ. P. 56(c)(1). If the Thurmans were never

26  *eligible*—and they have pointed to no evidence tending to show that they were—then the

ORDER
PAGE - 6

1    accuracy or transparency of Wells Fargo's *qualification* calculations is irrelevant.

2         The Thurmans also cite as "injury" the fees they incurred in participating in the mediation

3    of *this lawsuit*, which the Court ordered earlier this year. But those fees are not injuries caused

4    by Wells Fargo's alleged failure to mediate in good faith; they are attorneys' fees and costs

5    recoverable *only* if the Thurmans prevail on their CPA claim. *See, e.g.*, *Gray v. Suttel & Assocs.*,

6    No. 09-251, 2012 U.S. Dist. LEXIS 43885 at *20 (E.D. Wash. Mar. 28, 2012) ("[T]ime and

7    financial resources expended to . . . pursue a WCPA claim do not satisfy the WCPA's injury

8    requirement."); *Coleman v. Am. Commerce Ins. Co.*, No. 09-5721, 2010 U.S. Dist. LEXIS

9    97757, at *10 (W.D. Wash. Sept. 17, 2010) ("The cost of having to prosecute a CPA claim is not

10   sufficient to show injury to business or property.").

11        The Thurmans argue that Wells Fargo's alleged failure to mediate in good faith somehow

12   "forced [them] to file a Chapter 13 bankruptcy to stay [the scheduled trustee's] sale of their

13   property," that they "stand to lose in excess of $100,000.00 in equity in their home if the loan is

14   not modified and the property sold at trustee's sale," and that such events pose the risk of "injury

15   to [their] creditworthiness." (Dkt. No. 58 at 9–10.) Again, these arguments wrongly assume that

16   good-faith mediation would have resulted in a loan modification and a cancellation of the

17   scheduled trustee's sale.

18        The Thurmans confusingly assert, "Wells Fargo would have this Court believe that the[]

19   only means by which it could modify Plaintiffs' loan was through HAMP." (*Id.* at 10.) But Wells

20   Fargo discusses the Thurmans' ineligibility for both HAMP *and* MAP2R in its briefing.

21        Finally, the Thurmans argue that Wells Fargo "should be barred from profiting from its

22   'bad faith.'" (*Id.* at 11.) The relevant inquiry, though, is not whether Wells Fargo "profited" from

23   any failure to mediate in good faith, but rather whether the Thurmans were injured by that

24   alleged conduct. The Thurmans appear to believe that a beneficiary's breach of its duty of good

25   faith somehow automatically entitles the borrower to a loan modification. That is not the law.

26   *See* Wash. Rev. Code § 61.24.163(14).

ORDER
PAGE - 7

1     The Thurmans have failed to rebut Wells Fargo's showing of an absence of evidence of

2 injury and causation—two elements crucial to the Thurmans' CPA claim. Accordingly, the Court

3 GRANTS summary judgment for Wells Fargo on that claim and DISMISSES it with prejudice.

4 **III.     WELLS FARGO'S BREACH OF CONTRACT COUNTERCLAIM**

5     The Thurmans served Wells Fargo on August 10, 2012. (Dkt. No. 1 at 1 ¶ 1.) Wells

6 Fargo removed the action to this Court later that month. In October, the Court held a status

7 conference and established case management dates, including a deadline to amend pleadings of

8 January 4, 2013 and a trial date of September 30, 2013. (Dkt. No. 11.) Wells Fargo did not file

9 an answer to the Thurmans' complaint; instead, on November 1, it filed a motion to dismiss.

10 (Dkt. No. 13.) The Court denied that motion on January 2, 2013. (Dkt. No. 22.) Wells Fargo had

11 14 days from that date—*i.e.*, until January 16, 2013—to file its answer, but failed to do so. *See*

12 Fed. R. Civ. P. 12(a)(4)(A). However, the Thurmans neither objected nor filed a motion for

13 default. *See Boudreau v. United States*, 250 F.2d 209, 211 (9th Cir. 1957) ("[I]t is the plaintiff's

14 duty to expedite the case to its final determination and if he allows delay in the filing of the

15 answer he cannot complain of it."). On May 14, Wells Fargo filed an answer to the Thurmans'

16 complaint and a counterclaim for breach of contract. (Dkt. No. 33.)

17     When Wells Fargo added its counterclaim to this lawsuit, it did not move for a

18 modification of the scheduling order—which established a cutoff date of January 4, 2013 for

19 adding claims—and it did not make any showing of "good cause for not having [added its

20 counterclaim] before the time specified in the scheduling order expired." *Coleman*, 232 F.3d at

21 1294; *see* Fed. R. Civ. P. 16(b)(4). Accordingly, the Court DENIES Wells Fargo's implicit

22 motion to add its counterclaim as untimely, *see Johnson*, 975 F.2d at 608, and STRIKES the

23 counterclaim (Dkt. No. 33 at 5–6 ¶¶ 1–7). Even if the Court were to construe Wells Fargo's

24 filing of its counterclaim as a motion to modify the scheduling order to allow it to add its

25 counterclaim, the Court would reach the same result. Wells Fargo knew all the facts underlying

26 its breach of contract claim the moment the Thurmans filed suit. Only a lack of diligence can

ORDER
PAGE - 8

explain its decision to wait nine months before asserting it. *See, e.g.*, *In re W. States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) ("district court did not abuse its discretion in concluding that the Plaintiffs were not diligent in seeking to amend their complaints to add federal antitrust claims" "because they had known since 2007 . . . that federal antitrust claims may be viable"). In light of the foregoing, the Court VACATES the order of default against the Thurmans for their failure to timely answer Wells Fargo's counterclaim (Dkt. No. 38) and DENIES as moot the Thurmans' motion to set aside the order of default (Dkt. No. 57) and Wells Fargo's motion for summary judgment on its counterclaim (Dkt. No. 39).

In response to Wells Fargo's motions for summary judgment, the Thurmans filed several papers referencing the parties' confidential mediation discussions (and their version of what transpired therein). The Court GRANTS Wells Fargo's request (Dkt. Nos. 53, 59) to STRIKE from the record those references to confidential mediation communications and to SEAL the Thurmans' response papers. *See* Local Civ. R. W.D. Wash. 39.1(a)(6) ("[A]ll ADR proceedings under this rule, including communications, statements, disclosures and representations made by any party, attorney or other participant in the course of such proceeding, shall, in all respects, be confidential, and shall not be reported, recorded, placed in evidence, disclosed to anyone not a party to the litigation, made known to the trial court or jury, or construed for any purpose as an admission or declaration against interest."). The Court DENIES Wells Fargo's motion to impose sanctions on the Thurmans for their violation of Local Civil Rule 39.1's confidentiality requirement and for their habit to date of failing to comply with the Local Civil Rules and the Federal Rules of Civil Procedure. As the Court's discussion *supra* shows, Wells Fargo's track record of following deadlines and abiding by the Federal Rules also falls short of spotless. The Court would also note that neither party bothered, after the Court-ordered mediation on April 30, to ensure that written notice was provided to the Court stating when the mediation occurred and whether the case was resolved. *See* Local Civ. R. W.D. Wash. 39.1(c)(7).

1    **IV.     CONCLUSION**

2           For the foregoing reasons, the Court GRANTS Wells Fargo's motion for summary

3    judgment on the Thurmans' CPA claim (Dkt. No. 43), DISMISSES that claim with prejudice,

4    STRIKES Wells Fargo's counterclaim for breach of contract, DENIES as moot Wells Fargo's

5    motion for summary judgment on the counterclaim (Dkt. No. 39), VACATES the order of

6    default against the Thurmans on the counterclaim (Dkt. No. 38), DENIES as moot their motion

7    to set aside the order of default (Dkt. No. 57), DENIES Wells Fargo's request for sanctions, and

8    GRANTS its request to strike from the record the Thurmans' references to confidential

9    settlement communications and to seal the papers the Thurmans filed in response to Wells

10   Fargo's motions for summary judgment. The Court DIRECTS the Clerk to seal these papers

11   (Dkt. Nos. 47–51, 58).

12          The only claim remaining is the Thurmans' claim to enjoin the non-judicial foreclosure

13   sale of their home. Wells Fargo states that it "is not pursuing non-judicial foreclosure ( . . .

14   because it is instead pursuing a judgment on the Note), so that aspect of Plaintiffs' complaint is

15   moot." (Dkt. No. 43 at 8.) Unless and until the Thurmans move to dismiss their action for an

16   injunction, however, that claim (and only that claim) remains. As for a "judgment on the Note,"

17   Wells Fargo will have to pursue that claim in a separate judicial foreclosure action.

18          DATED this 2nd day of August 2013.

19

20

21

22

23          _____

24
            John C. Coughenour
25          UNITED STATES DISTRICT JUDGE

26

ORDER
PAGE - 10